IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN OF MISSISSIPPI
NORTHERN DIVISION - JACKSON

| | |
|---|---|
| STATE FARM FIRE AND CASUALTY § <br> COMPANYAS SUBROGEE OF § <br> W. RICHARD HILL, § <br>     Plaintiff, § <br>                                     § <br> vs.                                § <br>                                  § <br> RHEEM MANUFACTURING COMPANY, § <br> EMERSON ELECTRIC CO. and § <br> EMERSON CLIMATE TECHNOLOGIES, INC. § <br>     Defendants. § | Civ. Action No.**3:22-cv-00141-HTW-LGI** <br> Jury Requested |

**FIRST AMENDED COMPLAINT FOR DAMAGES WITH JURY DEMAND**

**COMES NOW,** Plaintiff, **STATE FARM FIRE AND CASUALTY COMPANY AS SUBROGEE OF W. RICHARD HILL**, by and through counsel who, upon representing to the Court that no answers or other responsive pleadings have been filed in this case, files this, its First Amended Complaint against Defendants**, RHEEM MANUFACTURING COMPANY and EMERSON CLIMATE TECNOLOGIES, INC.** (hereinafter sometimes referred to collectively as "Manufacturing Defendants"), and for cause of action would respectfully show the Court as follows:

**I. PARTIES, VENUE AND JURISDICTION**

1.    Plaintiff, State Farm Fire and Casualty Company, is a foreign corporation existing under the laws of the State of Illinois, and having its principal place of business in Bloomington, Illinois, who suffered tortuous injury due to the acts and/or omissions on the part of Manufacturing Defendants in Hinds County, Mississippi. Plaintiff insured W. Richard Hill against loss under a contract of insurance and paid such covered losses pursuant to said contract thereby becoming both contractually and equitably subrogated to Hill's claims as against Manufacturing Defendants.

2. Defendant, Rheem Manufacturing Company, is a foreign corporation existing under the laws of the State of Delaware and having its principal place of business in Atlanta, Georgia. Defendant Rheem, at all relevant times, has engaged in business or otherwise placed its manufactured products into the stream of commerce in the State of Mississippi, as more particularly described below. Defendant Rheem is not currently registered with the Mississippi Secretary of State. Defendant Rheem may be served at the location of its principal place of business, 1100 Abernathy Road N.E., Suite 1400, Atlanta, Georgia 30328.

3. The causes of action arose from and are connected with purposeful acts committed by Defendant Rheem in Mississippi because Defendant Rheem advertised, sold and delivered a heat pump bearing model no. RA1442BJ1NA and serial number W161838120 that is the subject of this case to distributors and entities in the State of Mississippi.

4. Defendant, Emerson Climate Technologies, Inc. is a foreign corporation existing under the laws of the State of Delaware and having its principal place of business in Sidney, Ohio. Defendant Emerson Climate Technologies, Inc., at all relevant times, has engaged in business or has otherwise placed its manufactured products into the stream of commerce in the State of Mississippi, as more particularly described below. Defendant Emerson Climate Technologies, Inc. is not currently registered with the Mississippi Secretary of State. Defendant Emerson Climate Technologies, Inc. may be served at the location of its principal place of business, 1675 West Campbell Road, Sidney, Ohio 45365.

5. The causes of action arose from and are connected with purposeful acts committed by Defendant Emerson Climate Technologies, Inc. in Mississippi because Defendant Emerson Climate Technologies, Inc. advertised, sold and delivered a Copeland model compressor which

was a component part of the heat pump manufactured by Defendant Rheem that is the subject of this case to distributors and entities in the State of Mississippi.

6. The "Property" at which the damage complained of herein occurred is located at 1205 F.O.A. Road, Jackson, Mississippi 39209.

7. Venue of this case is proper under 28 U.S.C. 1391(b)(2) because a substantial part of the events giving rise to this lawsuit occurred in this district.

8. The Court has jurisdiction over this case under 28 U.S.C. 1332(a)(1) because Plaintiff and Defendants are citizens of different states as defined by Section 1332(c)(1) and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

## II. BACKGROUND FACTS

9. Plaintiff incorporates paragraphs numbered 1-10 as if set forth fully herein.

10. At all times relevant hereto, W. Richard Hill (Hill) was the owner of the real and personal property located at 1205 F.O.A. Road, Jackson, Mississippi 39209 ("The Property").

11. On or about March 23, 2019, a fire erupted at The Property. Several local Fire Departments responded to the 9-1-1 call and extinguished the flames. The structure and the personal property contents within the Property were damaged extensively in the fire.

12. At all times relevant hereto, specifically at the time of the fire, Defendant Rheem was responsible for the design, manufacture, distribution and marketing of a Rheem brand heat pump bearing model no. RA1442BJ1NA and serial number W161838120 delivered to and installed in The Property.

13. The Rheem brand heat pump bearing model no. RA1442BJ1NA and serial number W161838120 is believed to have been manufactured by Defendant Rheem in or around 2017.

14. At all times relevant hereto, Emerson Climate Technologies, Inc. was responsible for the

design, manufacture, distribution and marketing of a Copeland model compressor, which was made a component part of the Rheem brand heat pump at issue in this case. The Copeland model compressor was installed in the Rheem brand heat pump by Defendant Rheem as part of Defendant Rheem's manufacturing process.

15. The Rheem brand heat pump, manufactured by Defendant Rheem, and the Copeland model compressor, manufactured by Defendant Emerson Climate Technologies, Inc., which was a component part thereof, are collectively referred to as "The Product".

16. Shortly after the fire, a certified fire investigator and other experts were retained by Plaintiff to investigate to determine the area of origin and cause of the fire at the Property. After conducting a thorough investigation, these investigators determined that the fire originated at the exterior south side of the structure at grade level where the Rheem brand heat pump was installed. Closer examination revealed that the fire's source of ignition was excess heat generated by the heat pump. The investigators determined that the cause of the fire was a mechanical defect in the compressor manufactured by Defendant Emerson Climate Technologies, Inc. The compressor was a component part of the Rheem brand heat pump.

17. As a direct, proximate and producing result of the failure of The Product, Hill suffered damages to his real and personal property and was forced to incur additional living expenses as a result of being displaced from his home due to the fire. The home was rendered uninhabitable by the fire.

18. Pursuant to the homeowner's insurance policy in effect on the date of loss, State Farm Fire and Casualty Company compensated W. Richard Hill for the covered damages he sustained as a result of the fire, and now brings this case to recover its contractual and equitable subrogation interests from Manufacturing Defendants.

## III.  CAUSES OF ACTION AGAINST MANUFACTURING DEFENDANTS

### Count One – Mississippi Products Liability Act – Manufacturing "Deviation" Defect

19. Plaintiff incorporates by reference the foregoing paragraphs as though fully set forth herein.

20. Pursuant to the Mississippi Products Liability Act ("MPLA") Miss. Code Ann. § 11-1-6(a)(i)(1), a manufacturer or seller of a product can be held liable if the claimant proves by the preponderance of the evidence that at the time the product left the control of the manufacturer or seller, that the product was defective because it deviated in a material way from the manufacturer's specifications or from otherwise identical units manufactured to the same manufacturing specifications.

21. At all times relevant hereto, Manufacturing Defendants owed a duty to Hill to exercise reasonable care in developing, designing, licensing, testing, distributing, supplying, manufacturing, packaging, labeling, marketing, promoting, recommending usage, advertising, warning, selling, and delivering The Product.

22. Manufacturing Defendants knew about the potential hazards to human health and property from The Product when installed in a manner such as that in which The Product was installed in Hill's home.  Hill was exposed to this risk because The Product was installed in his home.

23. The Product was defective and unreasonably dangerous in the following ways, which were the direct and proximate cause of Plaintiff's damages:

   a. Manufacturing Defendants advertised, marketed, sold, and distributed The Product knowing that there were safer models and products;

   b. Manufacturing Defendants failed to adequately and properly test The Product before placing same on the market, which would have shown that the product was unreasonably dangerous;

c. Lack of warnings or lack of sufficient warnings by Manufacturing Defendants of the inherently dangerous properties of The Product when used for the purpose for which it was designed, manufactured, distributed, and sold, despite Manufacturing Defendants' knowledge of the dangers associated with The Product;

d. Lack of instructions or lack of sufficient instructions by Manufacturing Defendants for eliminating or minimizing the risks inherent in the use of The Product;

e. Lack of reasonable inspections by Manufacturing Defendants of The Product to ensure that The Product contained sufficient warnings of the dangerous and/or defective properties;

f. By failing to recall The Product in a timely manner or to advise W. Richard Hill of the unreasonable risk of a fire; and

g. Lack of warnings or lack of sufficient warning by Manufacturing Defendants after they discovered the full extent of the dangers presented by The Product.

24. Prior to the date of the fire in question, Manufacturing Defendants manufactured, assembled, inspected, tested, sold and/or distributed The Product and introduced it into the stream of commerce in a manner rendering it defective, unsafe, and/or unreasonably dangerous. The Product was defective and unsafe for its intended purposes at the time it left the control of Manufacturing Defendants and at the time it was installed in the Property.

25. Manufacturing Defendants knew The Product was defective and that it presented the probability of harm to any foreseeable users unless it was free from defects. Therefore, Manufacturing Defendants had a duty to foreseeable users, and to Hill in particular, to inspect The Product to determine whether it would be reasonably fit for its intended purposes and warn or give fair and adequate notice of the inherently dangerous condition, which existed as a result of the

improper design and/or manufacture of The Product.

26. The Product was defective at the time it left the control and possession of Manufacturing Defendants because it deviated in a material way from the manufacturers' specifications. The defect was a producing cause of the occurrence in question and damages set forth herein. The manufacturing defect rendered The Product unreasonably dangerous, taking into consideration the utility of The Product and the risk involved in its use.

27. Manufacturing Defendants knew, or in the exercise of reasonable care, should have known that The Product was defective and unreasonably dangerous to Hill.

28. Manufacturing Defendants exercised substantial control over the aspects of The Product to which Plaintiff's insured was exposed and, as Manufacturing Defendants, were responsible for the design, testing, manufacturing, packaging, and/or labeling of The Product.

29. As part of the manufacturing and retail industries, Manufacturing Defendants had a high degree of technical knowledge and expertise regarding The Product and its installation and use. Hill, who was exposed to The Product installed in his home, did not at any time material to this cause possess the high degree of technical knowledge and expertise of Manufacturing Defendants. Hill relied upon Manufacturing Defendants to provide him with knowledge that The Product installed in his home was unreasonably dangerous or would be detrimental to his real and personal property. Manufacturing Defendants were under a duty to disclose this fact to those persons who would be subject to the dangers when using The Product.

30. Neither Hill nor any other ordinary user or consumer had any way of knowing about the defective nature of The Product. However, Manufacturing Defendants knew or, in light of reasonably available knowledge, should have known about the danger of The Product to cause fires.

31.     As a direct and proximate result of Manufacturing Defendants' defective manufacture and design, Hill suffered damage to his real property, personal property and was forced to incur additional living expenses due to his home being rendered uninhabitable by the fire.

## Count Two – Mississippi Products Liability Act – Inadequate Warning Claim

32.     Plaintiff incorporates by reference the foregoing paragraphs as though fully set forth herein.

33.     Pursuant to Miss. Code Ann. § 11-1-6(a)(2), a manufacturer or seller of a product can be held liable if the claimant proves by the preponderance of the evidence that at the time the product left the control of the manufacturer or seller, the product was defective because it failed to contain adequate warnings or instructions.

34.     At all times relevant hereto, Manufacturing Defendants owed a duty to Hill to exercise reasonable care in developing, designing, licensing, testing, distributing, supplying, manufacturing, packaging, labeling, marketing, promoting, selling, recommending usage, advertising and warning about The Product.

35.     At the time The Product left the control of Manufacturing Defendants, it was defective because it failed to contain adequate warnings or instructions.  The defective condition rendered The Product unreasonably dangerous to the user or consumer, and the defective and unreasonably dangerous condition of The Product proximately caused the damages for which recovery is sought herein.

36.     The Product was defective and unreasonably dangerous, and Manufacturing Defendants provided inadequate warnings and instructions in the following ways, which were the direct and proximate cause of Plaintiff's damages:

    a.     By designing, manufacturing, processing, advertising, marketing, testing, labeling, recommending uses, distributing, and/or selling The Product which they knew, or

      through the exercise of reasonable diligence, should have known were dangerous or unreasonably dangerous;

b. By failing to provide sufficient warnings of the inherently dangerous properties of The Product when used for the purpose for which they were designed, manufactured, distributed, and sold, despite Manufacturing Defendants' knowledge of the dangers associated with The Product;

c. By failing to take reasonable precautions or exercise reasonable care to warn Hill and others of the dangerous propensities of The Product, as well as the danger and harm they would be exposed to while The Product was installed in their homes;

d. By failing to provide sufficient warning when they discovered the full extent of dangers presented by The Product;

e. By failing to provide post-marketing warnings or instructions after Manufacturing Defendants knew or should have known of the significant risks associated with the use and exposure of The Product;

f. By failing to adequately warn, if in fact any warning was given at all, Hill of the dangers to his real and personal property from having The Product installed in his home;

g. By failing to provide instruction for eliminating the risks in The Product;

h. By failing to provide reasonable inspections to ensure that the product contained sufficient warnings of the dangerous properties.

i. By failing to adequately warn foreseeable users of the unreasonable, defective, and dangerous condition of The Product, despite the fact that Manufacturing Defendants knew or should have known of these unreasonably dangerous

        conditions associated with their products;

j.    By failing to remove, or cause to be removed, The Product from the market in a timely manner upon acquiring the knowledge that such products were unreasonably dangerous and would cause fires.

37. Manufacturing Defendants exercised substantial control over the aspects of The Product to which the Plaintiff's insured was exposed as Manufacturing Defendants were responsible for the design, testing, manufacturing, packaging and/or labeling of The Product that was installed in Hill's home, which failed and caused a fire and the resultant damage to Hill's real and personal property.

38. Hill was not knowledgeable of the defective condition of The Product that was installed in his home and did not realize the danger in using, being exposed to, or otherwise having the product installed in his home and, therefore, did not deliberately or voluntarily choose to expose himself to the danger in such a manner as to register assent to a dangerous condition.

39. Any warning or instruction given by Manufacturing Defendants was not an adequate product warning or instruction because it was not one that a reasonably prudent person in the same or similar circumstances would have provided with respect to the danger of The Product, and that communicated sufficient information on the dangers and safe use taking into account the characteristics and ordinary knowledge of an ordinary user and/or bystander who could be exposed to such products.

40. To the extent that Manufacturing Defendants claim to have provided adequate warnings regarding the installation of The Product, and to the extent that Manufacturing Defendants claim that the installer(s) of The Product were responsible for the fire and Hill's damages, Hill had no knowledge of any such failure(s) at the time the product was installed or anytime thereafter prior

to the fire. Hill did not deliberately or voluntarily choose to expose himself to the danger in such a manner as to register assent to a dangerous condition.

41. As a direct and proximate result of Manufacturing Defendants' failure to provide adequate warnings or instructions, Hill suffered damage to his real and personal property and incurred additional living expenses due to his home being rendered uninhabitable due to the fire damage, and other damages to be shown at the trial of this matter.

## Count Three – Mississippi Products Liability Act – Breach of Express Warranty

42. Plaintiff incorporates by reference the foregoing paragraphs as though fully set forth herein.

43. Pursuant to Miss. Code Ann. § 11-1-6(a)(2), a manufacturer or seller of a product can be held liable if the claimant proves by the preponderance of the evidence that at the time the product left the control of the manufacturer or seller, the product breached an express warranty or failed to conform to other express factual representations upon which the claimant justifiably relied in electing to use the product.

44. At all times relevant hereto, Manufacturing Defendants owed a duty to Hill to exercise reasonable care in developing, designing, licensing, testing, distributing, supplying, manufacturing, packaging, labeling, marketing, promoting, selling, recommending usage, advertising and warning about The Product.

45 At the time The Product left the control of Manufacturing Defendants, it was defective because it breached an express warranty or failed to conform to other express factual representations upon which Hill justifiably relied in electing to use the product. The defective condition rendered The Product unreasonably dangerous to the user or consumer, and the defective and unreasonably dangerous condition of The Product proximately caused the damages for which recovery is sought.

46. Hill purchased The Product with the intent to use The Product for personal use in his home. Hill necessarily relied upon assurances from Manufacturing Defendants in selecting, purchasing, and installing The Product in his home.

47. Hill also relied upon packaging, labeling, marketing, promoting, selling, recommending usage and advertising produced and published by Manufacturing Defendants in selecting and purchasing The Product.

48. The Product breached the express warranties or otherwise failed to conform to express factual representations published by Manufacturing Defendants.

49. As a direct and proximate result of the product's breach of an express warranty or failure to conform to other express factual representations made by Manufacturing Defendants, Hill suffered damage to his real and personal property and incurred additional living expenses due to his home being rendered uninhabitable due to the fire damage, and other damages to be shown at the trial of this matter.

## IV.  **DAMAGES**

50. As a direct, proximate and producing result of Defendants' wrongful conduct set forth herein, Plaintiff has been injured and damaged in one or more of the following ways:

   a. Damage to real property, including without limitation, physical harm to real property;

   b. Damage to personal property;

   c. Economic losses;

   d. Loss of use and enjoyment of real property.

51. Pursuant to an insurance policy in effect for the date of loss, State Farm Fire and Casualty Company has compensated W. Richard Hill for the covered damages he incurred as a result of the fire that occurred on or about March 23, 2019.  State Farm now brings this action against

Manufacturing Defendants seeking to exercise its rights to contractual and equitable subrogation. Plaintiff hereby asserts its claim for damages as described above.

## V. JURY DEMAND

52. Plaintiff hereby demands a trial by jury on all issues.

## PRAYER FOR RELIEF

WHEREFORE, PREMISES CONSIDERED, Plaintiff State Farm Fire and Casualty Company as subrogee of Earl Hill requests that Defendants be cited to appear and answer herein, and that after final trial Plaintiff recover:

    a.     A judgment against Defendants for compensatory damages as set forth above;

    b.     A judgment against Defendants for all court costs and expenses incurred by Plaintiff;

    c.     A judgment for its attorneys' fees;

    d.     A judgment for pre- and post-judgment interest as provided by law; and,

    e.     An Award for such other just and legal relief whether prayed for herein or not and which the Court deems just and appropriate.

Respectfully submitted,

By:    /s/ James E. Brouillette
       **James E. Brouillette**
       Mississippi Bar No. 10448
       3330 Lake Villa Drive, Ste. 202
       Metairie, Louisiana 70002
       (504) 378-0256
       Fax (504) 378-0258
       jebrouillette@yahoo.com

*ATTORNEY FOR PLAINTIFF*
*STATE FARM FIRE AND CASUALTY*
*AS SUBROGEE OF W. RICHARD HILL*